475 So.2d 662 (1985)
CITY OF ST. PETERSBURG, Florida, Petitioner,
v.
Barry L. WALL and George D. Cranton, Respondents.
No. 62821.
Supreme Court of Florida.
June 20, 1985.
Rehearing Denied October 7, 1985.
Michael S. Davis, City Atty. and B. Norris Rickey, Asst. City Atty., St. Petersburg, for petitioner.
H. Rex Owen and Bruce Crawford of Owen and McCrory, St. Petersburg, for respondents.
PER CURIAM.
We have before us a petition to review City of St. Petersburg v. Wall, 419 So.2d 1167 (Fla. 2d DCA 1982), which expressly and directly conflicts with City of Lauderdale Lakes v. Corn, 415 So.2d 1270 (Fla. 1982). We have jurisdiction. Art. V, § 3(b)(3), Fla. Const.
In 1977, the City of St. Petersburg (City) sought to condemn respondents' land for use in a proposed storm water drainage system and filed a lis pendens against the property. The trial court ruled that the City had not shown a necessity for the taking and entered a final judgment dismissing the petition for condemnation and dissolving the lis pendens. The City appealed and, pursuant to rule, an automatic stay of the judgment ensued. Respondents moved for an order authorizing the lower court to hear and determine a motion for an order requiring the City to post a supersedeas bond pursuant to former Florida Appellate Rule 5.12(2) (now Florida Rule of Appellate Procedure 9.310(b)(2)) to allow recovery for damages caused by the automatic stay pending disposition of the appeal. The district court denied the motion "without prejudice to appellees seeking recovery of damages and costs resulting from any stay pending appeal... ." The decision of the lower court was subsequently affirmed. City of St. Petersburg v. Wall, 364 So.2d 896 (Fla. 2d DCA 1978), cert. denied, 376 So.2d 69 (Fla. 1979).
Respondents initiated the present action, resulting in a jury verdict of $128,342.76 for damages sustained from the time the eminent domain action was filed. Upon *663 appeal by the City, the district court affirmed the award for damages incurred during the appellate process but reversed the award for damages incurred during the progress of the condemnation action at the trial level reasoning:
[w]here, as here; there has been no showing of bad faith, a city should not be held liable for litigating a case which it subsequently loses. All property is owned subject to the power of eminent domain. Where that power is exercised in good faith, damages will not be assessed against the unsuccessful exercise of that legal right, although the landowner is entitled to costs and attorney's fees. § 73.091, Fla. Stat. (1981).
City of St. Petersburg, 419 So.2d at 1169.
The City argues in its petition that the district court erred in affirming the award for damages sustained during the appeal and cites conflict with City of Jacksonville v. Brentwood Golf Course, Inc., 338 So.2d 1105 (Fla. 1st DCA 1976) and Corn.
We agree with the district court that City of Jacksonville is distinguishable from the present case and presents no conflict in decisions. In City of Jacksonville, the appellee did not move the court to vacate the stay, impose conditions on the stay, or require the posting of a supersedeas bond. The appellant in City of Jacksonville undertook no duty to pay damages incurred by the stay of execution during the appeal. By contrast, as the district court found in the present case:
Here, the city was on notice that we recognized its potential liability even though we excused it from the expense of posting a bond. There is little reason to request a solvent municipality to post a bond when its potential liability for obtaining a stay is made a matter of record.
City of St. Petersburg, 419 So.2d at 1169.
The City's second argument is that there is clear conflict with Corn and that the district court thus erred in affirming the award for damages incurred during the pendency of the stay. We agree there is conflict with Corn but approve the district court decision nevertheless.
In Corn we were presented with a certified question:
May a city be required to post a bond for damages for delay in order to secure a stay of a final judgment that requires the public body to permit the construction of a development project?
Corn, 415 So.2d at 1271. We answered in the negative "because the city's action [zoning] is in performance of a legislative `planning-level' function." Id. at 1271. In support of our decision, we noted the so-called "chilling effect" of requiring the city to post a bond in order "to appeal an adverse trial court decision declaring invalid a legislative act." Id. at 1272. We then explained:
We can conceive no justification for this Court to require the government to pay for judicial review of legislative actions... .
It is paramount for governmental bodies to have unrestricted appellate court review of their authority to act in a legislative capacity. Requiring the payment of damages for such review is not justified in other circumstances and cannot be here.
Id. Our explanation did not address the certified question. The city's right to appeal was not controverted and the district court of appeal did not ask if the appeal could be conditioned on the posting of a bond. If the right to appeal had been the issue, we should have simply referred the district court of appeal to well-established law:
There is no provision in the law which would authorize the lower Court to compel the appellant to furnish a supersedeas bond as a condition to perfecting his appeal from a final decree which is a matter of right under the Constitution and laws of this State. (Citations omitted.)
Horn v. Horn, 73 So.2d 905, 906 (Fla. 1954).
The purpose of the bond is to protect the party adversely affected against the consequences of the supersedeas or stay, *664 and not against the appeal when the appeal is of right... .
Bernstein v. Bernstein, 43 So.2d 356, 358 (Fla. 1949). See also our decision of over a century ago, Kilbee v. Myrick, 12 Fla. 416 (1868).
In our answer, we made the error for which we chided the Second District Court of Appeal in State ex rel. State Board of Trustees v. District Court of Appeal, 261 So.2d 818, 820. (Fla. 1972), where it conditioned the right of appeal upon the posting of a bond:
In our opinion, the District Court, by reason of unfortunate language in the last paragraph of the rule, has confused the purpose of a supersedeas bond thereunder which is to stay an adverse judgment by deeming it to be authority for an appellate court to require a bond as a condition precedent to the right of appeal. Compare Dixon v. Stone, Fla. 1949, 38 So.2d 459.
.....
The right to an appeal is a constitutional right which cannot be conditioned by the requirement of a bond. Horn v. Horn, Fla. 1954, 73 So.2d 905, 906.
State ex rel. Board of Trustees, 261 So.2d at 820.
In the present case, we see no reason in law or equity for permitting the City to realize the benefits of an unconditional stay of the trial court judgment and a lis pendens encumbering the property when its petition for condemnation has been denied in a proper judicial proceeding. Normally, whether an order in equity is superseded or not is a decision for the trial judge. Froelich v. Rowley, 102 So.2d 720 (Fla. 1958); Reid v. Barry, 90 Fla. 772, 107 So. 264 (1925). The cancellation of a lis pendens is likewise discretionary.
Rule of Appellate Procedure 9.310(b)(2) provides:

Public bodies; Public officers. The timely filing of a notice shall automatically operate as a stay pending review, except in criminal cases, when the State, any public officer in an official capacity, board, commission or other public body seeks review; provided that on motion the lower tribunal or the court may impose any lawful conditions or vacate the stay.
Here the appellees sought to require the City to post a bond as a prerequisite to the continuation of a stay. In its discretion, the district court properly denied this requirement, but without prejudice to the landowners to seek damages caused by the stay. In effect, this order was an alternative to the district court's power to strike the stay of the order cancelling the lis pendens. The City did not appeal the order of the district court. We can only assume that it elected to insist upon the stay, retain the lis pendens, and subject itself to the order which the district court had entered.
The district court reached the proper result by approving that part of the final judgment which subjected the City to its earlier order. We approve the decision.
It is so ordered.
BOYD, C.J., and ADKINS, McDONALD and SHAW, JJ., concur.
OVERTON, J., concurs in result with an opinion.
EHRLICH, J., dissents with an opinion, in which ALDERMAN, J., concurs.
OVERTON, Justice, concurring in result.
I concur in the result. I find conflict with City of Jacksonville v. Brentwood Golf Course, Inc., 338 So.2d 1105 (Fla. 1976), and distinguish our decision in City of Lauderdale Lakes v. Corn, 415 So.2d 1270 (Fla. 1982). In Brentwood, that court held that "[a]n unsuccessful appellant has no duty, independent of that voluntarily undertaken by posting a bond to avoid execution, to pay the successful appellee damages incurred by stay of execution during appellate delay." 338 So.2d at 1106. In contrast, the district court in the instant case expressly stated that the property owners could seek damages for appellate delay despite the absence of a bond.
*665 I conclude that maintaining the lis pendens against the property after the trial court had found there was no need to take the property constituted a taking during the course of an appeal. From the time the trial court determined that the city had not demonstrated a necessity for the condemnation of the respondents' property until the time the lis pendens was finally dissolved, the respondents in this case were deprived of any productive use or enjoyment of their property. The record is clear that during this period of time the property could not be sold, mortgaged, or developed. In my view, a taking occurred in this case when the lis pendens remained on the property after the trial judge had determined there was no necessity to condemn the property. The taking continued until the lis pendens was dissolved following the affirmance of the trial court's ruling.
I distinguish our decision in Corn on the basis that Corn concerned the validity of a zoning ordinance, not a taking of property in a condemnation proceeding. Zoning ordinance enactments and condemnations are distinct governmental actions. The authority to zone, which arises under the police power, contemplates only reasonable restrictions on the use of property. When a zoning ordinance is found to be confiscatory, the remedy is voidance of the ordinance rather than payment of damages. Dade County v. National Bulk Carriers, Inc., 450 So.2d 213 (Fla. 1984); Key Haven Associated Enterprises, Inc. v. Board of Trustees of Internal Improvement Trust Fund, 427 So.2d 153 (Fla. 1982). See J. Alpert, Florida Real Estate § 11.5 (1984). This case involved a condemnation proceeding. Under our law, a condemning authority must fully compensate the owners of condemned property for damages suffered, including any depreciation that has been caused by governmental action before an order of taking is entered. See State Road Department v. Chicone, 158 So.2d 753 (Fla. 1963). I would adhere to that rule of law in holding that a property owner must be made whole and fully compensated for damages suffered during a condemnation proceeding appeal when the action of the condemning authority deprives the owners of any productive use or enjoyment of their property. In this instance the respondents' property was, in effect, taken during the pendency of the appeal in this case as a result of the city's action in retaining a lis pendens on the property. The failure to compensate the owners for this taking, in my view, constitutes a violation of article X, section 6(a), of the Florida Constitution.[*]
For these reasons, I concur in the result of the majority opinion.
EHRLICH, Justice, dissenting.
I dissent.
The majority finds no fault with the district court's decision that a city is not liable for damages arising out of a good-faith condemnation action. That holding was clearly correct because the exercise of eminent domain is quintessentially a governmental planning-level function cloaked with sovereign immunity. The majority then holds, in effect, that an appeal from an adverse ruling in that same condemnation action somehow sheds that cloak, making the city liable for consequential damages. The majority does not explain this transmogrification of a planning-level function from immunity to liability, not can this holding be harmonized with any current analysis of sovereign immunity in Florida.
The appellate court's denying the motion for supersedeas bond "without prejudice" to Wall's right to seek damages is not dispositive. The appellees had no right to seek damages from a sovereign performing an immune function. Judicial recital that a ruling is made without prejudice to a non-existent right cannot create that right. Sovereign immunity can be waived by the legislature by general law. Art. X, § 13, Fla. Const. Sovereign immunity is not waived by application of the rules of appellate *666 procedure to appeals of causes arising out of the sovereign's immune actions.
Furthermore, the majority overlooks the nature of the supersedeas obligation. As the First District clearly and correctly explained in City of Jacksonville v. Brentwood Golf Course, Inc., 338 So.2d 1105, 1106 (Fla. 1st DCA 1976):
[T]he obligation of an appellant, as principal, is founded wholly on the bond itself. He signs the bond, not as a redundant confirmation of some independent obligation imposed as an incident of the appeal, but to bind himself and his heirs and assigns to pay according to its terms, and thereby to obtain supersedeas. When as here a bond was not required for supersedeas, there is consequently no obligation. For the appeal itself the law exacts no price or penalty. Statutory interest is of course incurred on unsatisfied money judgments regardless of whether execution is stayed.
(Emphasis supplied.)
Here, the city never entered into a bond; there is therefore no obligation for the city to fulfill. To hold otherwise, as the majority does here, is to exact a price or penalty for the appeal itself. Had the court required the bond, the city would have faced a choice: to post the bond subject to conditions imposed by the court or to dissolve the lis pendens and allow appellee to proceed with his development. The city would have been bound by the decision it made after full and fair consideration. By refusing to require the bond but imposing liability for damages for delay caused by the appeal, the court usurped the city's decision-making authority and created an obligation where heretofore one has never existed. This impinges upon the doctrine of separation of powers and sets an unfortunate precedent.
Having expressed the foregoing, I hasten to add that I do not dispute respondent's injury. He has been damaged in the course of these proceedings. It is the unfortunate condition precedent for any operation of sovereign immunity that someone has been hurt by an act of the state or its agents. The proper source of relief in this case, as in other sovereign immunity situations, is the legislature. Respondent could file a claims bill seeking restitution for his damages.
ALDERMAN, J., concurs.
NOTES
[*] That section provides: "No private property shall be taken except for a public purpose and with full compensation therefor paid to each owner or secured by deposit in the registry of the court and available to the owner."